Plaintiff, prose
Department;
196 Haut Brion Ave
Newark Delaware 19702
413-330-1147
gville1971@gmail.com

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2022 FEB 28  PM 2: 04

UNITED STATES DISTRICT COURT

2 2 -  2 5 8

DISTRICT OF DELAWARE

| | |
|---|---|
| Granville S Watson | Case No; |
| Plaintiff; | 42 USC 1983 |
| V. | ( Violation of the IV, V, VII, VIII, XIII |
| State of Connecticut, Manchester Police Department, Manchester Probation | ( and XIIII Amendments and ( FRAUDULENT CONCEALMENT) |
| Defendants; | |

**JURISDICTION**; This court has jurisdiction as State Officials committed Federal crimes against a United States citizen in violation of Federal law. Also, the state's process for wrongful incarceration claims has been exhausted and the petitioner's claim has been denied due to lack of authority by the claim commissioner's office. The claims commissioner does not have the authority to overrule the state statute under any circumstance.

**PLAINTIFF**; appearing pro se, brings this complaint against the defendants and alleges as follows:

**Page 1 of 10**

**COMPLAINT**;

1) On or around August 12, 1997, the plaintiff's brother ( Audley Watson) had an altercation with a Reginald Montgomery who was trying to steal property from the plaintiff. Reginald Montgomery and Audley Watson fought, and Reginald Mongomery died as a result of his injuries.

Several witnesses stated that the plaintiff's only involvement was trying to stop the altercation. The Manchester police later arrested the plaintiff's brother and charged him with first-degree murder.

The plaintiff and Reginald Montgomery had previously argued over the plaintiffs car. Reginald Montgomery told the plaintiff that he would steal the plaintiff's car and that the Manchester police were so racist that they would probably find a reason to arrest the plaintiff because he is black. Prior to Reginalds death, the plaintiff had called the police on several occasions and told the police of Reginald's intentions of stealing the plaintiff's car.

2) The Manchester Police went into the plaintiff's house ( without a warrant ) on or around September 20,1997. They created a fake drug charge (non-quantity of marijuana ) to detain the plaintiff. The police told the plaintiff that they had reason to believe he was involved in a way that would ultimately result in the plaintiff being charged with murder.

The plaintiff was held on a bond consistent with a murder charge, a  judge asked why the  bond was so high for a non-quantity of marijuana charge, and a prosecutor told the judge that the plaintiff murdered someone. The judge said that the charge was for a non quantity of marijuana, then asked if there was even marijuana and the prosecutor did not respond. The judge said, "don't do this to me" and then reduced the bond to $500. The plaintiff bailed out of jail. The plaintiff went to court for approximately one year, on the fraudulent marijuana charge. The prosecutor tried with several judges during the course of the year, to have the plaintiff's bail revoked and held in jail, as the prosecutor believed the plaintiff was involved criminally in the death of Reginald Montgomery. The fraudulent drug case went on for one year, and on September-17-1998, the non quantity of marijuana charge was dismissed, and there were no other charges against the plaintiff. As the plaintiff prepared to leave the court, the prosecutor said to a judge that the plaintiff murdered someone and that the judge is letting a murderer walk out of the court.

The judge asked if the District Attorneys' office was sure of the murder because if the court incarcarated the plaintiff and murder charges were not filed, someone would be held accountable.

**Page 2 of 10**

The prosecutor said to the judge , we discussed this earlier , you must keep the drug charge so this will be legitimate. The judge asked the prosecutor if the District Attorneys Office was certain of the plaintiffs involvement in a murder and the procecuter said yes and the judge then said we will not place a fraudulent drug charge against ( Granville Watson ) if he will be ultimately charged with murder. The judge then said "the only thing we can do is say that the plaintiff is on probation and say he is in violation of the probation". The prosecutor told the judge that the sentence would be in error if the drug charge was dismissed and the judge asked again if the District Attorneys Office was certain ( Granville Watson ) murdered someone, the procecuter told the judge that the District Attorneys Office was certain that  ( Granville Watson) murdered someone then the judge said," if you are certain he will be charged with murder we dont have to use a fraudulent drug charge against Mr. Watson".


 3) The judge sentenced the plaintiff to three years in prison for violating probation.
The plaintiff was not on probation. The plaintiff did not violate probation. No crime was committed, and there were  no charges against ( Granvillle Watson ) and no reason was given for violating this false probation. The judge, the prosecutor, the plaintiff, and the plaintiff's attorney knew that the sentence imposed was fraudulent. The judge said to the prosecutor," if you don't charge ( Granville Watson ) with murder we are all in a lot of trouble".

4) After completing the three-year prison sentence, the plaintiff tried to obtain records about the arrest and conviction for the two sentences in question but was told that all records pertaining to the plaintiff were ordered destroyed.

5) The plaintiff contacted all state agencies that would have records, and all stated that the documents were either destroyed or have been deemed off-limits to the plaintiff. To this day, the Probation Department in Manchester, Connecticut, and the Manchester Superior Court are under orders not to release any information to the plaintiff.

6) The plaintiff contacted Manchester Superior Court  around June 2001 to try and obtain records pertaining to the arrest and sentence and was directed to the District Attorney's Office. A State Official ( who would not give her name ) told the plaintiff that they were the one who worked on the case and made a big mistake and that the Manchester Police were to blame. The plaintiff was told by this state official that the Manchester Police gave erroneous information to the District Attorney's Office, and the arrest and prison sentence should not have happened. The plaintiff was told to move on and get over the wrongful incarceration. The plaintiff told this person that this was the second time this happened, first a five-year prison sentence and now a three-year sentence. And the plaintiff was now homeless with a criminal record. The plaintiff asked to have his record expunged but was told that doing so would open the state to a lawsuit, but in time, the plaintiff could request a pardon.

**Page 3 of 10**

6) Approximately January  2008, the plaintiff applied for an exoneration and was denied. The pardon board contacted the plaintiff and told him that the state did not grant exonerations because this would open the state to potential liability. The plaintiff could apply again in approximately one year from the denial. The plaintiff started the pardon process the following year. The pardon board asked for documents about the violation of probation conviction; there were no documents about the violation conviction because the plaintiff was not on probation when he was convicted for violation of probation.


     The plaintiff was directed to the court by the pardon board to clear up the matter. The plaintiff  contacted Manchester Superior Court and was directed to the District Attorney's office in Manchester Connecticut, to which the plaintiff was told that the matter would be handled. The pardon board contacted the plaintiff and stated that the District Attorney's Office and the probation department submitted the needed documents, and the pardon process would move forward. The plaintiff asked for copies of the documents submitted to the pardon board, as these documents were introduced as if they came from the plaintiff. The District Attorney's Office and the pardon board and the probation department denied the plaintiff access to the documents.

On September 30, 2009, the pardon was granted to the plaintiff.

7) The pardon board and state officials are aware that there is a distinction between an exoneration and a pardon.
     An exoneration means that the individual was innocent, and a pardon means the individual was guilty, but the state will forgive the crimes. The pardon board clarifies this while going through the pardon process. The pardon board first denied the plaintiff's application for an exoneration but later granted an application for a pardon.

8)     The State's Attorney ( William Tong ) stated in his response to the plaintiff's claim commission filling that the plaintiff should have filed suit or applied for compensation within two years after the plaintiff received the pardon, but as a granted pardon is an admission of guilt, filing documents claiming innocence after the pardon could be considered a crime. The supreme court made clear the distinction between exoneration and pardon. (Burdick vs. The United States).
     The State's Attorney William Tong responded to the claim commission filing March 6, 2020, as did the Manchester police department internal affairs unit, and conceded that the plaintiff was wrongfully incarcerated. Still, the state's attorney believes the statute of limitations has expired. The internal affairs investigator stated" if ( Granville Watson) would have filed suit in a timely manner, a lawsuit would have been a slam dunk".


**Page 4 of 10**

9) ( **FRAUDULENT CONCEALMENT** ) The state's attorney failed to acknowledge that fraudulent documents were created and submitted to state and government agencies to cover the wrongful incarceration, which constitutes fraudulent concealment and a federal crime. The fact that the state's attorney and the Manchester police on March 6, 2020, just acknowledged this wrongful incarceration for the first time serves the purpose of an exoneration, making the statute of limitations claimed by the state invalid. This acknowledgment of wrongful incarceration on March 6 2020, in my opinion, constitutes an exoneration and makes the compensation claim valid. The state can not conceal evidence, cover up crimes, and claim that the statute of limitations protects it from liability.

10) On **March 3 2020,** the plaintiff spoke with Veronica Rogers who is an employee with the pardon board.  The plaintiff asked Mrs Rogers for copies of the pardon package that he submitted years prior. Mrs Rogers said that if the plaintiff sent a notarized letter and identification that she would send copies of the pardon package. Once Mrs Rogers located the records she stated that there was a letter stating that under no circumstance can the contents of this file be given to Granville Watson. Mrs Rogers stated that she didn't understand this notation because it's common knowledge that the pardon package is sent in from the person applying for the pardon. She said there was no one there to clarify this notation and asked if the plaintiff knew why these documents couldn't be released to the plaintiff. The plaintiff told Mrs Rogers that the notation was in error and it would be ok to give these documents to the plaintiff. The plaintiff told Mrs Rogers that he lost his copies and needed these documents for his records and Mrs Rogers complied and sent the documents. The plaintiff tried for years to obtain copies of these fraudulent documents sent in to the pardon board by state officials, this was the first time the plaintiff was able to obtain these documents.

   On **May 13 2020,** the plaintiff spoke with a Lisa Santiago who is an employee with the Manchester Probation Department and asked if the plaintiff could get copies of all records pertaining to the plaintiff, Mrs Santiago asked for a copy of a driver's license or a notarized letter and she would send copies of all records. The plaintiff immediately emailed a copy of his drivers license along with the request for the documents, Mrs Santiago by that time had been informed that all records pertaining to the plaintiff have been deemed classified by state officials.

**Page 5 of 10**

11) The plaintiff had a pending claim with the Claims Commission in Connecticut. This is the process for filing for compensation in a wrongful incarceration claim. On January 6, 2022, the Claims Commissioner denied the claim, citing that the power given to the Claims Commissioner can not overrule the state's statute of limitation. The state statute says that the petitioner must file for compensation within two years of a pardon, and the plaintiff was granted a pardon on September 30, 2009. Therefore it would be beyond the power of the Claims Commission to grant compensation no matter the reason.

12) On **November 4 2021** the Claims Commision sent a letter to the plaintiff asking for an additional year to make a decision on the compensation claim.

   On January 6 2022 the Claims Commision in the State of Connecticut denied the plaintiff's request for compensation. The plaintiff never received a denial letter and called the Clams Commision on February 18, 2022 to ask about the claim and was told that a denial letter was sent out via email and the plaintiff had 20 days to respond, and since there was no response the claim was closed. The plaintiff said he did not get a denial letter and the Claim Commissions attendant stated that the plaintiff should check his spam folder, maybe the denial letter is there.

13) The Connecticut Wrongful Incarceration Statute is deficient and worded improperly, I believe, intentionally. The pardon board clarifies before, during, and after a pardon that it is an act of state forgiveness and, therefore, you can not sue. The state denies applications for exonerations. The state rejected the plaintiff's application for an exoneration. Consequently, the state's attorney's assertion that the plaintiff should have filed for compensation in the time frame that he gave in his response to the plaintiff's claim commission filing is in error.

14) The plaintiff wrote a letter to the State's Attorney explaining how the state statute was worded poorly, and the state removed the word exonerate from the statute. The state statute was amended in March 2020. The change in the wording, in my opinion, is a continuation of the crimes against the plaintiff.

15) The pardon itself was fraudulent. Fake documents were sent in to the pardon board by state officials so that the plaintiff could get a pardon under pretense. The pardon board knew as well that the documents submitted by state officials were fraudulent and went along with the fraud and granted the pardon.

16) **( FIVE YEAR SENTENCE )** On January 10, 1991, the plaintiff was arrested for possession of a pistol with no permit. The plaintiff was a manager at Taco Bell restaurant and attending Manchester Community College and just joined the military, and was several weeks away from leaving to start training in the armed forces. Another manager ( Ramona Hruby) claimed she was held up at gunpoint by two white men, and they stole the daily proceeds from her. The Manchester police investigated and discovered that one black man stole the daily proceeds from Ramona Hruby. The man was Robert Fischer, and he was arrested. Upon questioning Robert Fischer, Mr. Fischer told the police that he never met Ramona and that the petitioner; (Granville Watson) told him about Ramona and that the plaintiff also provided his father's licensed handgun for the robbery. The police searched, found the plaintiff's father's licensed gun, and arrested the plaintiff.

17) When detectives Michael Morrissey and detective Lombardo questioned the plaintiff and stated that the arrested suspect Robert Fischer and the victim Ramona Hruby didn't know each other and that the only possible way Robert could have known about Ramona was through the plaintiff ; the plaintiff responded by telling the detectives that the plaintiff was prior friends with Robert Fischer and when Robert found out that the plaintiff (Granville Watson) and Ramona Hurby briefly dated Robert Fisher and the plaintiff stopped being friends. Robert Fischer and Ramona Hruby are married with seven children. They had children at the time of the robbery; their eldest son's name is Robert Fischer Jr. The detectives did not know this, but upon learning this information from the plaintiff , opted to keep this information from the court.

   The plaintiff told his public defender about this. The public defender told the plaintiff that Ramona Hruby is a white woman, and Robert Fischer and the plaintiff are African American. The public defender told the plaintiff" there was no way the court would prosecute a white woman over a black man.

**Page 7 of 10**

18) The plaintiff being under military contract, military lawyers got involved and stated that possession of a weapon is a felony for the State of Connecticut,but a misdemeanor for the federal government. Since the plaintiff was under military contract, the military would pull rank and take the plaintiff.. The District Attorney's Office then charged the plaintiff with 13 counts of

accessory to robberies and burglaries, all of the crimes that Robert Fischer had committed. These charges violated the plaintiff's contract with the military, and the plaintiff's contract with the army at that time terminated. All of the added charges were dismissed. The charges were only added to get the plaintiff's military contract voided; once the military contract was voided , the state went with the original charge of possession of a weapon. No gun was ever given to Robert Fischer by the plaintiff for any reason at any time. The plaintiff does not believe a gun was used at all given that Robert Fischer and Ramona Hurby were married and in on the crime together. The plaintiff has talked to Ramona Hurby over the years, and she states that she regrets her involvement with the plaintiff going to prison for crimes she and her husband committed and the plaintiff was not involved in.

19) **( PRESENTENCE INVESTIGATION )**; For the five-year sentence given on January 10, 1991, a presentence investigation was conducted and stated the following. The plaintiff was chronically unemployed, that the plaintiff  was a poor student, that the plaintiff  was a constant problem for his community, and that the plaintiff  was doing nothing with his life and going nowhere. The report read that the court should sentence the plaintiff  to the longest jail sentence possible.

The presentence investigations done on me were a miscarage of justice. I had two of these done for crimes I did not commit in the first place, and the misinformation written in these reports should be considered a crime. The plaintiff  believes he did more to advance himself than most people, the plaintiff's contributions to society are not reflected in these reports.

  Several individuals started companies that correct these fraudulent presentence reports. The plaintiff was told that a new amended presentence investigation would include college, military, and work history if he paid two thousand dollars. The fact that anyone would have had to pay to have correct information submitted to a judge who was about to hand down a sentence should be considered a crime.

**Page 8 of 10**

**CONCLUSION;**

( 20 )  The plaintiff  was wrongfully sentenced to a five-year prison sentence and then wrongfully imprisoned for a three-year sentence; The plaintiff  should be compensated for the eight years of wrongful convictions and the criminal record that the plaintiff had for almost a decade after his release from prison.

   The plaintiff  ( for the three-year sentence) was not allowed to leave the court and inform his job or secure his possessions and had to file for bankruptcy upon his release from prison in 2001.

   The state can not commit a crime, cover it up, still engage in a criminal conspiracy, then claim the statute of limitations protects it from liability. The Manchester Probation Department and the Manchester Superior court have a special handler for this case to this very day. As of yet no one has been held accountable for this egregious miscarage of justice.

   When a defendant has concealed his misconduct, the limitations period does not begin to run until after the plaintiff discovers, or with due diligence should have discovered, his claim against the defendant.


   The defendants all agree that the plaintiff was incarcerated wrongfully and fraudulently, and the only issue was the statute of limitations.The defendants fraudulently concealed information from the plaintiff to which the plaintiff has only recently been able to obtain. The fraudulent documents created and submitted to the pardon board and to different agencies are a crime. The damage done to the plaintiff has forced the plaintiff to move to another state and has forever damaged his reputation and security.


**Page 9 of 10**

**RELIEF**;

(21)The plaintiff requested five million dollars for wrongful incarceration, damage to reputation, loss of employment  and loss of personal property from the Claims Commission in Connecticut. The plaintiff  does not believe this amount to be unfair when all elements of this miscarage of justice is taken into account.  But the Claims Commissioner's decision made clear that this amount seems inappropriate.

The plaintiff has no objection to a jury or judge deciding on compensation. The State's Attorney, the Manchester Police Department and Connecticut State Officials are all aware of the wrongful incarceration and if these individuals truly care about justice, all should agree on compensation to the plaintiff.

  The plaintiff  should be compensated as a result of these harmful acts. This suit should be allowed to move forward.

Respectfully;
Petitioner;

Granville S Watson
196 Haut Brion Ave
Newark Delaware 19702
413-330-1147
gville1971@gmail.com

**Page 10 of 10**