UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRANVILLE S. WATSON,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CONNECTICUT et al.,<br><br>Defendants. | : | CASE NO. 3:22-cv-563(KAD) |

**RECOMMENDED RULING**

Plaintiff, Granville Watson, has initiated an action against the State of Connecticut, the Manchester Police Department, and the "Manchester Probation Department." The Honorable Kari A. Dooley referred this matter to the undersigned for an initial review of the complaint. For the reasons set forth below, the Court recommends that the action be DISMISSED pursuant to 28 U.S.C. § 1915.

I. Background

In the early 1990s, plaintiff was a manager of a Taco Bell restaurant and enlisted in the armed forces. (Dkt. #2 at 7.) Another manager at Taco Bell, Ramona Hruby, was robbed. (Dkt. #2 at 7.) The Manchester Police Department investigated the robbery and arrested Robert Fischer. (Dkt. #2 at 7.) Fischer told the police that he had never met Hruby before and that plaintiff told Fischer about Hruby and provided plaintiff's father's licensed handgun for Fischer to use to rob Hruby. (Dkt. #2 at

7.) Plaintiff was arrested for possession of a pistol without a permit on January 10, 1991. (Dkt. #2 at 7.)

Detective Michael Morrissey and Detective Lombardo questioned plaintiff. (Dkt. #2 at 7.) The detectives told plaintiff that Fischer and Hruby did not know each other, so the only way for Fischer to have known to rob Hruby would have been at plaintiff's suggestion. (Dkt. #2 at 7.) Plaintiff told the detectives that he knew Fischer, and plaintiff and Fischer had stopped being friends when Fischer learned that Hruby and plaintiff had briefly dated. (Dkt. #2 at 7.) Plaintiff also told the detectives that Fischer and Hruby were married at the time of the robbery with seven children. (Dkt. #2 at 7.) According to the complaint, the detectives kept this information out of court to proceed with the charge against plaintiff. (Dkt. #2 at 7.)

Military lawyers became involved in plaintiff's case because of his enlistment. (Dkt. #2 at 7.) Plaintiff states that the military was going to "pull rank" and prosecute the plaintiff for a federal misdemeanor instead of allowing the state to prosecute plaintiff for a felony. (Dkt. #2 at 7.) The state prosecutor then charged plaintiff with 13 counts of accessory to robbery and burglary, crimes which according to plaintiff were actually committed by Fischer, so the army would terminate plaintiff and void his military contract. (Dkt. #2 at 7-8.) Once plaintiff's military contract had been voided, these

charges were dropped, and only the possession of a pistol without a permit charge proceeded. (Dkt. #2 at 8.)

A presentence investigation was conducted ahead of plaintiff's sentencing. (Dkt. #2 at 8.) According to plaintiff, the report included false information and suggested plaintiff should receive the longest sentence possible. (Dkt. #2 at 8.) Plaintiff was sentenced to and served five years imprisonment. (Dkt. #2 at 7.) Plaintiff asserts that he never committed this crime. (Dkt. #2 at 8.)

The complaint further alleges that on or around August 12, 1997, Reginald Montgomery attempted to steal property from plaintiff.[1] (Dkt. #2 at 2.) Plaintiff's brother, Audley Watson, then fought Montgomery, who died as a result of injuries sustained in the fight. (Dkt. #2 at 2.) Plaintiff asserts that according to several witnesses, plaintiff's only involvement was trying to stop the altercation between his brother and Montgomery. (Dkt. #2 at 2.) Plaintiff's brother was later arrested and charged with first-degree murder. (Dkt. #2 at 2.)

Plaintiff alleges that on September 20, 1997, Manchester police officers went to his house and "created a fake drug charge (non-quantity of marijuana)" as a way to detain

[1] The Court notes that a different version of these facts appear in plaintiff's brother, Audley Watson's, federal habeas case. *See* Watson v. Murphy, No. 3:08cv568(WWE), 2012 WL 4754680, at *1-2 (D. Conn. Oct. 3, 2012).

plaintiff, as the officers believed that plaintiff would eventually be charged with Montgomery's murder. (Dkt. #2 at 2.)

The drug charge was dismissed on September 17, 1998. (Dkt. #2 at 2.) When the drug charge was dismissed, the prosecutor allegedly stated "that the plaintiff murdered someone and that the judge is letting a murderer walk out of the court." (Dkt. #2 at 2.) In front of plaintiff, the prosecutor and the judge allegedly had a conversation in which they colluded to create a false charge to detain plaintiff. (Dkt. #2 at 3.) Plaintiff alleges that the prosecutor and the judge fabricated a violation of probation charge, though plaintiff was not on probation. (Dkt. #2 at 3.) Plaintiff was then sentenced to three years in prison for violating probation. (Dkt. #2 at 3.) Plaintiff was not allowed to leave the courtroom after his sentencing, and he lost his job and possessions. (Dkt. #2 at 9.) Plaintiff filed for bankruptcy after his release from prison. (Dkt. #2 at 9.)

After his period of incarceration, plaintiff attempted to obtain records regarding his conviction and arrest, "but was told that all records pertaining to the plaintiff were ordered destroyed." (Dkt. #2 at 3.) Plaintiff asserts that any documents that still exist have been "deemed off-limits to the plaintiff." (Dkt. #2 at 3.)

In January of 2008, plaintiff applied for an exoneration and was denied. (Dkt. #2 at 4.) Plaintiff was allegedly told by

the state pardons board that the state did not exonerate individuals to prevent exposing the state to liability. (Dkt. #2 at 4.) Plaintiff then applied for a pardon and was told he would need to provide documentation about the probation violation conviction, but plaintiff had no documentation because the charge was allegedly fraudulent. (Dkt. #2 at 4.) Plaintiff contacted the Manchester Superior Court and the Manchester District Attorney's Office about documentation. (Dkt. #2 at 4.) Plaintiff alleges that unbeknownst to him, the Manchester District Attorney's Office submitted documentation to the state pardons board in a manner that made it seem as if the documents were submitted by plaintiff. (Dkt. #2 at 4.) Plaintiff was denied access to these documents. (Dkt. #2 at 4.) Plaintiff was pardoned on September 30, 2009. (Dkt. #2 at 4.)

Sometime thereafter, plaintiff filed a claim with the State of Connecticut Office of the Claims Commissioner to seek redress for wrongful conviction under Connecticut General Statutes § 54-102uu. (Dkt. #2 at 4.) On March 6, 2020, the State's Attorney responded to plaintiff's claim and allegedly conceded that plaintiff had been wrongfully incarcerated, but the statute of limitations had run on plaintiff's claim such that he could not receive compensation. (Dkt. #2 at 4.) Plaintiff's claim with the Office of the Claims Commissioner was denied on January 6, 2022. (Dkt. #2 at 6.)

On May 13, 2020, plaintiff alleges he spoke with Lisa Santiago, an employee of the Manchester Probation Department, to obtain copies of any records pertaining to him. (Dkt. #2 at 5.) After some conversation, Santiago told plaintiff that all records regarding plaintiff were "deemed classified by state officials." (Dkt. #2 at 5.)

Plaintiff seeks $5,000,000 in compensation for wrongful incarceration, damage to reputation, loss of employment, and loss of personal property. (Dkt. #2 at 10.)

## II. Legal Standard

Under 28 U.S.C. § 1915(e), a court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Under 1915(e), an action is frivolous, "if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 327). The "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke, 490 U.S. at 325. An action fails to state a claim to relief if it lacks

> sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to the probability that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [the court] must construe *pro se* complaints liberally." Lerman v. Bd. of Elections, 232 F.3d 135, 140 (2d Cir. 2000). Therefore, *pro se* complaints "are held to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980)(internal citation and quotation marks omitted). "In evaluating [a plaintiff's] complaint, [the court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor." Cruz v. Gomez, 202 F.3d 593, 596-97 (2d Cir. 2000).

## III. Initial Review

Plaintiff seeks to bring claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Seventh, Eighth, Thirteenth, and Fourteenth Amendments. (Dkt. #2 at 1.) Plaintiff also seeks to bring a claim for fraudulent concealment, as plaintiff alleges defendants concealed documentation and created false

documentation to obtain a pardon, when plaintiff should have been exonerated. (Dkt. #2 at 1, 5-6.)

Before the Court analyzes plaintiff's complaint, the Court will first note that plaintiff previously filed a complaint in this District that was dismissed by the Honorable Jeffrey A. Meyer. Watson v. Connecticut, No. 3:20-cv-00544 (JAM), 2020 WL 3404066 (D. Conn. June 19, 2020). Many of the defects present in plaintiff's previous case exist in the present complaint.

a. *Proper Defendants*

As Judge Meyer previously noted, "none of the defendants named by Watson may be subject to his lawsuit for money damages in federal court." Id. at *1.

Plaintiff seeks to sue the State of Connecticut. The Eleventh Amendment prohibits claims for money damages against states or state actors. Kentucky v. Graham, 473 U.S. 159, 169-70 (1985). "The State of Connecticut is immune from a damages suit in federal court absent its consent or waiver of sovereign immunity." Watson, 2020 WL 3404066, at *1. As in plaintiff's previous case, there is no indication that the State of Connecticut has consented to this lawsuit or waived its sovereign immunity. Id. (citing Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004)). The State of Connecticut is not a proper defendant.

Plaintiff also seeks to sue the Manchester Police Department. As Judge Meyer stated, "[a]s for Watson's lawsuit against the Manchester police department, it is well established that a police department is not an independent legal entity that may be subject to suit in federal court for a violation of federal constitutional rights." Id. (citing Watrous v. Town of Preston, 902 F. Supp. 2d 243, 255 (D. Conn. 2012); Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 164 (D. Conn. 2005)).

The only remaining defendant is the Manchester Probation Department. It is unclear to the Court whether there is such an entity as the "Manchester Probation Department." There is an Adult Probation division of the State of Connecticut Judicial Branch with offices located across the State of Connecticut, including Manchester. *See* Adult Probation, State of Connecticut Judicial Branch, https://jud.ct.gov/directory/directory/adult prob.htm. Any lawsuit against the Connecticut Judicial Branch would be barred by the doctrine of sovereign immunity as Judge Meyer previously articulated. Watson, 2020 WL 3404066, at *2 (citing Sargent v. Emons, 582 F. App'x 51, 52 (2d Cir. 2015)).

Construing plaintiff's complaint liberally, if plaintiff is attempting to sue a division of the city of Manchester, then plaintiff must state a claim under Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-93 (1978). For Monell liability, a plaintiff must allege a violation of his

constitutional rights stemming from the municipality's formal policies or customs. Joseph v. Nassau Cnty. Dep't of Probation, No. 21-CV-1690 (PKC)(PK), 2021 WL 2400994, at *3 n.4 (E.D.N.Y. June 11, 2021).

> Four types of practices may underly a § 1983 suit against a municipality: (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policymakers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

Joseph v. NYC Dep't of Corr., No. 20-CV-1676 (PKC)(LB), 2020 WL 2128860, at *2 (E.D.N.Y. May 5, 2020) (internal quotation marks and citation omitted).

Plaintiff does not allege that any formal policies, customs, or practices of the Manchester Probation Department resulted in any constitutional violations. It appears that the only claim plaintiff seeks to raise against the Manchester Probation Department is fraudulent concealment. Even assuming the Manchester Probation Department could be sued, plaintiff's claim against it must still be dismissed, as discussed below.

b. *Fraudulent Concealment*

Plaintiff attempts to raise a fraudulent concealment claim that was not raised in his previous case. Connecticut's fraudulent concealment statute allows for the tolling of a statute of limitations under certain circumstances. Connecticut

General Statutes § 52-595 states: "If any person, liable to any action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Conn. Gen. Stat § 52-595.

> In order to benefit from the § 52-595 tolling provision, a plaintiff must demonstrate: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff['s] cause of action; (2) [the] defendant's intentional concealment of these facts from the plaintiff[]; and (3) [the] defendant's intentional concealment of the facts for the purpose of obtaining delay on the plaintiff['s] part in filing a complaint on their cause of action.

Dennany v. Knights of Columbus, No. 10cv1961(SRU), 2011 WL 3490039 (D. Conn. Aug. 10, 2011) (alterations and citation omitted). Additionally, "the plaintiff must prove that he did not know the facts supporting his cause of action. In other words, the plaintiff cannot toll a limitations period based on the defendant's fraudulent concealment if the plaintiff already discovered the facts establishing the defendant's liability." Id. at 5.

Here, plaintiff's complaint makes clear that he was aware of the facts establishing the defendants' liability. Plaintiff knew he did not commit the crimes for which he was convicted at the time of his convictions in 1991 and 1997. Plaintiff's

complaint establishes that he was aware of these facts establishing defendants' liability by alleging that the State of Connecticut and Manchester Police Department prevented him from obtaining records about his case and submitting false documentation to the state pardons board.

c. *Statute of Limitations*

Plaintiff's remaining claims are barred by the statute of limitations even if he had sued the proper defendants. As Judge Meyer has already stated, "[i]n Connecticut, a civil rights claim under 42 U.S.C. § 1983 is subject to a three-year statute of limitations." Watson, 2020 WL 3404066, at *2. Plaintiff was pardoned in 2009, and would have had three years, until 2012, to file his lawsuit. Id.

IV. Conclusion

For the reasons set forth herein, the Court recommends plaintiff's complaint be DISMISSED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.** *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995);

Small v. Sec'y of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this 28th day of April, 2022 at Hartford, Connecticut.

/s/

Robert A. Richardson
United States Magistrate Judge